Jacques LeBLANC, Plaintiff,

v.

The TJX COMPANIES, INC., Defendant.

No. 00–4853–CIV.

United States District Court, S.D. Florida, Miami Division.

July 16, 2002.

Michael Benjamin Feiler, Feiler & Leich, Coral Gables, FL, for Plaintiff.

James Morgan Craig, Ford & Harrison, Tampa, FL, for Defendant.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE is before the Court upon Defendant The TJX Companies, Inc.'s Motion for Summary Judgment (DE# 19). Response and reply have been filed.

UPON consideration of the Motion, responses, and the pertinent portions of the record, the Court enters the following Order granting Defendant The TJX Companies, Inc.'s Motion for Summary Judgment.

## BACKGROUND

Plaintiff LeBlanc, an African American male of Haitian origin, was formerly employed by the Burlington Coat Factory, but left that position to begin employment at a T.J. Maxx store on June 8, 1998.[1] TJX Regional Recruiting Manager Tom Evak made the final decision to offer LeBlanc an employment position. Plaintiff completed a short training program at Store No. 271 before starting his new job as an assistant manager at Store No. 291, located at 8765 S.W. 136 Street, Miami, Florida, across from the Falls Shopping Center. Plaintiff's starting salary of $43,000 a year made him the highest paid assistant manager in the district. At the time that Defendant terminated Plaintiff

on September 2, 1999, Plaintiff was 63 years old.

Plaintiff originally filed a complaint against Defendant in December of 2000. He is now traveling on the counts included in his Amended Complaint. The allegations included in his Complaint include race and age discrimination in promotion and termination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A. § 2000e, et. seq.; the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and the Florida Civil Rights Act of 1992 ("FCRA"), Florida Statutes § 760.01, et. seq. Plaintiff also alleges that he experienced a hostile work environment and suffered retaliation for his Equal Employment Opportunity Commission ("EEOC") activity.

## I. DISCUSSION

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment may be entered only where there is no genuine issue of material fact. See Twiss v. Kury, 25 F.3d 1551, 1555 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most

---

1. Defendant operates under the name T.J. Maxx.

favorable to the party opposing the motion. *Id.* at 157, 90 S.Ct. 1598.

> However, the non-moving party
>
> [m]ay not rest upon the mere allegations and denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In fact,

> the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Id.* at 323, 106 S.Ct. 2548.

**B. Defendant's Motion for Summary Judgment**

**(1) Retaliation for EEOC activity**

Plaintiff asserts that his termination from employment at Defendant company was an act of retaliation for his complaints to the EEOC. Defendant argues that Plaintiff cannot demonstrate a *prima facie* case of retaliation, as his charge of discrimination with the EEOC was not signed until September 7, 1999, five days after his termination from Defendant's employ on September 2, 1999. Consequently the charge itself does not include allegations of retaliation.

■■■ In order to establish a *prima facie* case of retaliation under Title VII, Plaintiff must show that (1) he engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the Plaintiff's protected activities. *Little v. United Technologies,* 103 F.3d 956, 959 (11th Cir.1997). Plaintiff has satisfied the first two prongs of the *prima facie* case, as he participated in protected activity by filing a complaint with the EEOC and he experienced the adverse employment action of termination. However, Plaintiff has failed to show that the adverse action was causally related to Plaintiff's protected activities, as he filed the complaint after being terminated.

■■■ To establish a causal connection, a plaintiff need only show that "the protected activity and the adverse action were not wholly unrelated." *Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1354 (11th Cir.1999) (*quoting Simmons v. Camden County Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir.1985)). This can be accomplished by a showing that the decision maker was aware of the protected conduct at the time of the adverse employment action. *See Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993). Temporal proximity between the adverse employment action and the protected activity is not sufficient to create a genuine issue of material fact as to the causal connection where there is unrebutted evidence that

the decision maker did not have knowledge that the employee engaged in protected conduct. *See Clover,* 176 F.3d at 1355–56. Nelson Cueto, the District Manager for District No. 26 in T.J. Maxx's Southeast Region, asserts that when he met with Plaintiff to advise him of his termination, he was unaware of complaints of race or age discrimination previously made by Plaintiff.[2] Plaintiff has not provided evidence that Nelson Cueto did know of his plan to file a complaint with the EEOC, not does Plaintiff even address this issue in his response to Defendant's motion for summary judgment. It appears therefore that Plaintiff has abandoned his retaliation claim, and accordingly Defendant's motion for summary judgment will be granted on this claim.

*(2) Termination based on age and race*

■ Plaintiff first asserts that he has provided direct evidence to support his termination claim. Plaintiff states that Nelson Cueto informed Plaintiff that Plaintiff would not need to be trained as "an old man like you doesn't have to go [to training] because [he] knows these things already."[3]

■ The standard for offering direct evidence of discriminatory intent is a stringent one, and only the most blatant comments will serve to prove such intent. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081–82 (11th Cir.1990). Direct evidence is evidence which does not require an inferential leap from fact to conclusion, as the statement alone proves the fact of intent. *Merritt v. Dillard Paper Co.,* 120

F.3d 1181, 1189 (11th Cir.1997), quoting *Rollins v. TechSouth Inc.,* 833 F.2d 1525, 1528 n. 6 (11th Cir.1987). Plaintiff's proffer of Cueto's statement does not serve as direct evidence of discrimination. At most the evidence can be said to suggest discrimination, "leaving the trier of fact to *infer* discrimination based on the evidence; by definition then, the evidence is circumstantial." *Earley,* 907 F.2d at 1081–82. *See also Wavde v. Digital Equip. Corp.,* 994 F.Supp. 1433, 1439 (S.D.Fla.1997) (finding statement "Why don't you understand? Is it because of your background, or is it because of your ethnic background or where you have come from?" not to be direct evidence of discrimination).

■ As Plaintiff has failed to show the existence of direct evidence, the Court will follow the burden shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[4] Under this test, Plaintiff must show that (1) he is a member of a protected minority, (2) he was qualified, (3) he was subjected to an adverse employment action, and (4) the defendant treated similarly situated employees outside the class more favorably. *Id.,* 802, 93 S.Ct. 1817; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1539 n. 11 (1997); *Russell v. American Eagle Airlines, Inc.,* 46 F.Supp.2d 1330, 1335 (S.D.Fla.1999). Should a plaintiff demonstrate a *prima facie* case, the defendant then has the burden of producing a legitimate, nondiscriminatory explanation for the adverse action. The presumption of discrimination disappears upon this articulation, and the plaintiff

---

**2.** Nelson Cueto Declaration, ("Cueto Dec."), ¶ 15.

**3.** Plaintiff's Memorandum of Law in Opposition to TJX Companies Inc.'s Motion for Summary Judgment, at 3.

**4.** Plaintiff's claims under the ADEA and the Florida Civil Rights Act ("FCRA") are all analyzed under Title VII standards. *See Kossow v. St. Thomas Univ., Inc.,* 42 F.Supp.2d 1312, 1314–15 (S.D.Fla.1999); *Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385, 1387 (11th Cir.1998).

once again bears the burden of production. In order to satisfy this burden a plaintiff must demonstrate that the employer's given reason was pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 802–04, 93 S.Ct. 1817.

Defendant concedes that Plaintiff is a member of a protected minority for both his age and race discrimination claims as Plaintiff is an African American Haitian male over the age of 40. He also suffered an adverse employment action upon being terminated from his position with Defendant company. For the purposes of Plaintiff's *prima facie* case, the Court assumes that Plaintiff is qualified to perform his job. It is on the fourth prong of the *prima facie* case that Plaintiff's claim for termination fails.

█ In an effort to show the existence of a similarly situated employee outside the class whom Defendant treated more favorably, Plaintiff states that he has, on many occasions, observed customers complaining to Nelson Cueto "about the same type of things of which he accuses me and they were never written · up."[5] Plaintiff also states that other managers sold sample items to customers. Plaintiff however fails to indicate specific instances or individuals to support his assertions, relying solely on his conclusory allegations.

█ Plaintiff also states that a customer complained about employee Eugenia Espana and that had this complaint been directed to the attention of Nelson Cueto, he would not have written her up. The complaint that the customer made regarding Espana was routed through customer service, and accordingly Plaintiff claims that is the only reason why the complaint was documented. Plaintiff then adds, "the only Assistant Managers who get written up are the ones Mr. Cueto wants to get rid of."[6] Plaintiff's assertion that if the complaint against Espana had been directed to Nelson Cueto, Cueto would not have taken disciplinary action against Espana is an inadmissible conclusion. *See Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir.1998) (finding that affidavit statement of employee asserting that "Management, especially Dean Coleman, took a scapegoat approach in dealing with employee problems and generally tended to cover up matters" was a conclusory allegation appropriately disregarded on a summary judgment motion).

█ In addition, Plaintiff is not similarly situated to Espana, as Plaintiff had a number of complaints filed against him before being terminated. Espana, in comparison, had a clean disciplinary record. A plaintiff must show a person similarly situated in all relevant respects in order to make a *prima facie* case. *See Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 12 (1st Cir.1994); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997). It is appropriate to grant an employer's summary judgment motion where an employee has failed to show the existence of a similarly situated employee and has not presented other evidence of discrimination. *Id.* at 1562 *(citing Mack v. Great Atl. and Pac. Tea Co.*, 871 F.2d 179, 182 (1st Cir. 1989)).

█ Defendant provides a legitimate, nondiscriminatory reason for Plaintiff's termination; that Plaintiff frequently treated customers with disrespect, at times even becoming confrontational. In addition, Plaintiff also exhibited rude behavior to fellow colleagues. Defendant has pro-

---

5. Plaintiff's Affidavit, ¶ 7.

6. Plaintiff's Memorandum of Law in Opposition to TJX Companies Inc's Motion for Summary Judgment, at 5–6.

vided a considerable amount of evidence supporting this contention.

Shortly after Plaintiff was hired by Defendant, the store manager of Store No. 291, Derick Daniel, issued a written warning to Plaintiff on September 10, 1998 for improper conduct towards associates and the use of profanity with associates.[7] On September 16, 1998 Daniel issued a second written warning to Plaintiff for Plaintiff's argumentative behavior when asked why the voice mail messages system (known as the ROLM system to Defendant employees) had not been checked on September 15, 1998.[8]

On December 11, 1998, Nelson Cueto issued a third written warning to Plaintiff. Cueto alleges that at Store No. 291, he asked Carlos Sandoval, a senior store manager, to assist him with merchandising. Sandoval inquired how long Plaintiff would be working on one particular task, which apparently incensed Plaintiff, as he told Sandoval that he did not know when he would be finished and added, "What do you think you are my boss? You are not my boss to be questioning on time frame."[9] Plaintiff stated in his deposition that he did not respond to Sandoval's question in a rude tone of voice.[10]

Due to this incident, Cueto requested that Plaintiff discuss the event with Sandoval. Cueto alleges that Plaintiff continued to be rude and insubordinate, to such an extent that Cueto claims he considered immediately terminating Plaintiff's employment. Cueto issued a written warning concerning the incident and its aftermath on December 11, 1998, which Plaintiff refused to sign.[11]

On January 12, 1999 Cueto issued another written warning to Plaintiff. This concerned two incidents; (1) Plaintiff made a racial statement in front of four African American hourly associates and (2) Plaintiff closed a store without setting the alarm on January 13, 1999. As concerns the racial statement, Plaintiff apparently asked a worker to come to the front of the store. When the worker did not respond, Plaintiff stated that black people needed slave drivers, and that you cannot be too nice to them.[12] Plaintiff later wrote in the store's communication log on December 27, 1998, admitting that he had made the statement and affirming his belief in it, but also apologizing for having said it.[13]

In the January 12, 1999 Sub–Standard Performance Warning Form, Cueto wrote

1. Jacques will avoid any statement to or in front of customers, internal or external, which are discourteous or disparaging.

2. Jacques will review alarm/closing procedure with his store manager including those to be followed when cleaners are in the store.

3. Jacques will ensure the proper alarms are set before exiting the store when closing.

Cueto also indicated on the form (by marking the appropriate decision box) that

---

7. Cueto Dec., ¶ 7; September 10, 1998 Sub–Standard Performance Warning.

8. Cueto Dec., ¶ 8; September 16, 1998 Sub–Standard Performance Warning.

9. Cueto Dec., ¶ 9; December 11, 1998 Sub–Standard Performance Warning.

10. Plaintiff Deposition Transcript, at 122:17–19.

11. Cueto Dec., ¶ 9; December 11, 1998 Sub–Standard Performance Warning.

12. Cueto Dec., ¶ 10; Statements by Desiree Dickins and Jacqueline Williams.

13. January 12, 1999 Sub–Standard Performance Warning.

further occurrence of the above violation or any other violation of company policies and procedures would result in immediate termination.

Plaintiff received his annual performance evaluation on April 30, 1999. Store manager Derick Daniel gave him a rating of 160, which is on the lower end of the "meets expectation" range. Cueto states that this is one of the lowest ratings of an assistant manager in his district for the fiscal year 1999.[14]

Defendant has also provided two instances of customer complaints against Plaintiff in support of its assertion that it terminated Plaintiff's employment for a legitimate, nondiscriminatory reason. On or about June 21, 1999 a customer called to complain about the difficulty she encountered in returning an item to Store No. 291. The customer alleged that Plaintiff was brought over to discuss the issue with her, but he refused to make eye contact with her for the entire conversation. He also proclaimed "just give her what she wants, I don't have time to listen to her life store [sic]".[15] Plaintiff did not receive a written warning after this event. The second incident occurred on August 10, 1999. A customer wanted to buy some perfume, but the regular store stock was depleted. She inquired as to whether she would be able to purchase the sampler bottle on display. Greg Poyser, a store employee, directed her to Plaintiff, whom the customer claims was very rude and discourteous to her. The customer mailed a letter of complaint to Defendant company, in which she stated "I can honestly say throughout my shopping days I have never experienced the blatant disrespect Mr. LeBlanc extended to me."[16] Shortly thereafter, Cueto met with Plaintiff on September 2, 1999 to inform him that he was terminated from his position. Cueto alleges that he gave Plaintiff the option of resigning, but that Plaintiff refused.

In an effort to show that Defendant's given reason for Plaintiff's termination is pretextual, Plaintiff claims that all the written performance warnings against him were "staged in order to justify his termination."[17] Plaintiff alleges that all of the complaints issued against him were filed days after he issued his own complaints to Nelson Cueto. For example, Plaintiff contends that he received the September 10, 1998 warning six days after filing a letter of complaint with Cueto alleging harassment and his failure to be promoted. He also states that he received the September 16, 1998 warning five days after he filed a September 11, 1998 letter. Plaintiff also argues that no other managers check the voice mail system on a daily basis, but does not dispute the allegation that he exhibited rude behavior when asked why he had not done so on September 15, 1998.

Similarly, Plaintiff alleges that his third warning issued seven days after he sent another letter to Nelson Cueto, which was also forwarded to three other Defendant supervisors. In this letter Plaintiff claims he complained about Cueto's use of profanity on the selling floor. Finally, Plaintiff states that his fourth warning occurred after he sent a letter to all of the high management officers at Defendant company about "what [he] thought [he] was go-

---

14. Cueto Dec., ¶ 11.

15. *Id.*, ¶ 13.

16. Marci Dorsey letter, dated August 20, 1999.

17. Plaintiff's Memorandum of Law in Opposition to TJX Companies, Inc.'s Motion for Summary Judgment, at 5.

ing through." [18]

In sum, Plaintiff contends that Defendant employees strategized to build a case against him and papered his file with complaints so that his termination appeared legitimate. Plaintiff however does not specifically address the customer complaints lodged against him, and does not assert that they are false accusations.

The Court finds that Defendant's motion for summary judgment on Plaintiff's termination claim is appropriately granted, as Plaintiff has not advanced sufficient evidence to create a material issue of fact as to whether Defendant's legitimate, nondiscriminatory rationale for terminating him is pretextual. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Defendant has presented a well-supported legitimate, nondiscriminatory explanation for its termination of Plaintiff, and Plaintiff has responded in kind with allegations only. In addition, Plaintiff's allegations are unsupported; Plaintiff has not provided the Court with copies of the complaints he lodged with Cueto nor has he proffered testimony from a witness that would corroborate his claims of pretext. Accordingly, Plaintiff has failed to withstand his burden.

### (3) Failure-to-promote (age and race)

In order to state a *prima facie* case of discrimination in the failure-to-promote context, a plaintiff must show that (1) he is a member of a protected minority, (2) he sought and was qualified for the promotion, (3) he was rejected in spite of his qualifications, and (4) the Defendant company promoted an individual outside the plaintiff's protected class, or else continued to attempt to fill the position. *Mays v.*

*Union Camp Corp.*, 114 F.Supp.2d 1233, 1238–39 (M.D.Ala.2000); *Bernstein v. Sephora*, 182 F.Supp.2d 1214, 1221 (S.D.Fla. 2002). Plaintiff has satisfied the first prong, as he is African American and over the age of 40. Defendant contends that Plaintiff fails to show evidence of his qualification for the job. This is a contention with which the Court agrees.

While Plaintiff does not state if his claim for failure-to-promote is based on race or age discrimination, or possibly both, one of his allegations is that Eugenia Espana was promoted to the position that Plaintiff should have received. Plaintiff alleges that he was promised the store manager position four months after he started employment, but was never placed in it. Plaintiff also asserts that Espana did not have the same level of education nor experience that Plaintiff does, but fails to list her credentials or educational level for purposes of comparison. Nonetheless, "disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face." *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253–54 (11th Cir.2000) (*quoting Deines v. Texas Dept. of Protective and Regulatory Servs.*, 164 F.3d 277, 280 (5th Cir.1999)). Plaintiff had a spotted disciplinary record with Defendant company, while Espana's record was free of any disciplinary activity. In addition, Espana had a higher evaluation score than did Plaintiff. Rather than providing an explanation of how Plaintiff is nonetheless better qualified than Espana, Plaintiff asserts that "there is no way someone with my level of experience and education could receive such a low score." [19] Plaintiff also

---

**18.** Plaintiff's Affidavit, ¶ 7.

**19.** Plaintiff's Memorandum of Law in Opposition to TJX Companies, Inc.'s Motion for Summary Judgment, at 7–8.

alleges that store manager Derick Daniel did not have Plaintiff's level of experience and was motivated to give him such a low performance score to avoid promoting Plaintiff. This is a conclusory allegation for which Plaintiff has not provided support. In addition, Derick Daniel was already a store manager upon Plaintiff's arrival at Defendant company, and was not promoted over Plaintiff for a position.[20] Plaintiff also claims that his true performance level is characterized by the 1.44 % store increase and 8.52% department increase. However, Plaintiff has not provided evidence showing that these numbers are in fact accurate. Nonetheless, assuming in Plaintiff's favor that they are true, this does not address the fact that Espana, who was promoted while Plaintiff was not, did not have a disciplinary record. In addition, in the retail industry where customer service is a top priority, a candidate without a record marred by customer complaints may be considered a more qualified candidate than one with a record containing such complaints. A subjective reason such as this can constitute a "legally sufficient, legitimate, nondiscriminatory reason under the *McDonnell Douglas/Burdine* analysis." *Denney v. City of Albany*, 247 F.3d 1172, 1185 (11th Cir.2001). "Personal qualities...factor heavily into employment decisions concerning supervisory or professional positions. Traits such as 'common sense, good judgment, originality, ambition, loyalty, and tact' often must be assessed primarily in a subjective fashion, yet they are essential to an individual's success in a supervisory or professional position." *Id.*, at 1186. Therefore, "absent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective

criteria will rarely, if ever, prove pretext under Title VII or other federal employment discrimination statutes." *Id.*, at 1185. Plaintiff has not provided sufficient evidence that subjective hiring criteria were used as a cover for discrimination, relying instead on his allegations that the complaints filed against him by colleagues and customers were part of a "set-up" wherein he would be fired.

Plaintiff's additional allegations concerning his failure-to-promote claim involve other promotions that occurred in his district during the term of his employment; (1) the promotion of Jose Solano, a Hispanic male, working at Store No. 271, and (2) the promotion of Estrada Zedan, a Caucasian female, located at Store No. 424.

Nelson Cueto asserts that Zedan did not in fact receive a promotion, as she was already a store manager who transferred to her respective store.[21] In fact, Plaintiff states in his deposition transcript that he knew Zedan transferred to a smaller store.[22] Nonetheless Defendant has offered evidence showing that Plaintiff was not as qualified as he has represented. For instance, Cueto declares that based on Plaintiff's disciplinary record alone, Cueto would not have given him a promotion. Even assuming that Plaintiff had a clean disciplinary record, Cueto states that one of the main factors in making supervisory promotions is the employee's evaluation score for the immediate preceding fiscal year. Plaintiff maintained a score of 160, while Plaintiff's alleged comparators, Daniel, Espana, and Solano, received respective scores of 245, 219, and 238. In addition, these individuals did not have a disciplinary record similar to Plain-

---

**20.** Cueto Dec., ¶ 12.

**21.** Cueto Dec., ¶ 12.

**22.** Dep. Tr., 232:4–10.

tiff's at the time of their promotions.[23]

■ Even taking Plaintiff's *prima facie* case of failure-to-promote as established, Defendant has produced a legitimate, nondiscriminatory reason for the challenged employment action. *Denney,* 247 F.3d at 1183. That is, Plaintiff was not promoted due to his receipt of four written warnings for five separate incidents and two reported customer complaints during a fifteen (15) month period of employment in combination with his low performance evaluation score in the preceding fiscal year.[24]

Upon Defendant's presentation of a legitimate, nondiscriminatory explanation for Plaintiff's termination, Plaintiff has the ultimate burden of showing that the reason is a pretext for unlawful discrimination. *Denney,* 247 F.3d at 1183; *Holifield,* 115 F.3d at 1564. The Court finds that Plaintiff has failed to satisfy this burden.

■ Plaintiff alleges that his poor performance evaluation is pretextual, because someone with his experience and educational background could not have received the low performance evaluation score that he did. Accordingly Plaintiff claims that he received such a low score from Derick Daniel because Nelson Cueto instructed Daniel to do so. This contention is unsubstantiated. In addition, "the inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." *Id.,* at 1565. Defendant has produced performance reports and documentary evidence of disciplinary actions taken against Plaintiff, and therefore Plaintiff's lone assertion, without supporting evidence, that he is in fact a good employee will not serve to defeat Defendant's motion for summary judgment. *Id.,* at 1565.

Plaintiff has failed to show that Defendant's legitimate, nondiscriminatory reason is unworthy of credence or that Defendant was more likely motivated by a discriminatory reason in failing to promote Plaintiff. Accordingly, Defendant is entitled to the entry of summary judgment on this claim.

### (4) Hostile work environment

■ A hostile work environment claim under Title VII is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In order to establish a *prima facie* case of a hostile work environment based on race or national origin, Plaintiff must show that (1) he belongs to a protected group, (2) he has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic of his, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under either a theory of vicarious or of direct liability. *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir.2002).

■ Plaintiff is a member of a protected group, as he is an African American male of Haitian origin. In order to show harassment, Plaintiff makes the following allegations; (1) he was falsely accused of not completing his job responsibilities, (2) Nelson Cueto's secretary, Irene Lopez, and Assistant Manager Cox disorganized Plaintiff's department so that Plaintiff

---

**23.** Cueto Dec., ¶ 12.

**24.** Cueto Dec., ¶ 12.

would be accused of not completing his job, (3) Plaintiff was accused of being slow, (4) people told Plaintiff he did not do anything correctly, and (5) Plaintiff was subjected to write-ups once he started filing letters of complaint to Nelson Cueto. Plaintiff adds that the treatment was so severe · as to cause him to collapse on the floor of Defendant store one evening, and that the alleged harassment was "physically threatening because carried out at close range by the store manager, including Mr. Cueto." [25]

The Court notes that Plaintiff has failed to even claim much less provide evidence that the alleged harassment was based on a protected characteristic. None of the instances cited by Plaintiff have even an indirect correlation or connection to race or national origin. Even assuming that Plaintiff has satisfied this showing, the Court finds that the conduct of which Plaintiff complains is not sufficiently severe or pervasive to constitute a hostile working environment.

 A court is to evaluate the objective severity of a harassment claim using the following factors (1) frequency of the conduct, (2) severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's job performance. *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir.1997) (*citing Harris*, 510 U.S. at 23, 114 S.Ct. 367). Plaintiff does not provide any evidence of the frequency of the conduct, as he only alleges that he was accused of not doing his job, of being slow, and not being able to do anything correctly. In addition to not even making allegations as to the frequency of such conduct, Plaintiff has failed to state which individuals made such accusations. One of the only instances for which Plaintiff has provided some detail is that of the alleged disorganization of the store, which Plaintiff asserts happened on several occasions.

The Court finds Plaintiff's claim lacking in allegations of severity as well. Plaintiff simply states that it was severe, because it affected his physical and mental well-being and his family life, and in the end caused him to collapse. No further detail is provided as to this factor. Similarly, Plaintiff states that the conduct was physically threatening or humiliating, because it occurred in "close range" by Nelson Cueto. Once again, Plaintiff's allegation alone does not prove his claim. As to the final factor, that of unreasonable interference with Plaintiff's work, Plaintiff states that his health and job performance were both affected.

Under the totality of the circumstances, the Court finds that the conduct of which Plaintiff complains does not reveal an environment sufficiently hostile such that a reasonable person would find it abusive, even if Plaintiff himself did.

## II. CONCLUSION

Based on the foregoing, it is ORDERED AND ADJUDGED that Defendant The TJX Companies, Inc.'s Motion for Summary Judgment (DE# 19) is GRANTED. The Clerk of the Court is directed to mark this case as CLOSED. All pending motions not otherwise ruled upon are DENIED AS MOOT.

**25.** Plaintiff's Affidavit, ¶ 6.